The Honorable Mike Wilson State Representative 1202 Main Street P.O. Box 5269 Jacksonville, AR 72076
Dear Representative Wilson:
This is in response to your request for an opinion concerning Act 489 of 1987, codified at A.C.A. 11-5-114 (Supp. 1987). Specifically, you have posed four questions about the statute which are as follows:
(1) Is it constitutional?
 (2) If so, are the criminal sanctions contained therein enforceable as a valid exercise of the State's police power?
 (3) If constitutional, can the statute's terms and conditions relating to prescription drugs be imposed upon health plans subject to ERISA?
 (4) If constitutional, is the statute enforceable against a church employer or church affiliated entity furnishing services to church employers for their employees?
In the interests of logic and clarity, this opinion will address these issues in the following order: (1) Is the statute preempted by the provisions of ERISA? (2) To the extent the statute is not preempted, (such as with respect to church plans), is it otherwise constitutional?; and, (3) Are the criminal sanctions found in the statute a proper exercise of the police power? For the reasons that follow, it is my opinion that to the extent ERISA is applicable, it preempts the statute. As such the statute to that extent is unconstitutional under the Supremacy Clause. Because ERISA does not apply to church plans, however, it must be determined whether the statute is otherwise constitutional as applied in situations where ERISA does not control. In that regard it is my opinion the statute presents a serious constitutional question as to whether it places an undue burden on interstate commerce under the Commerce Clause. Additionally, the criminal sanctions imposed by the statute may be questioned as a valid exercise of the police power.
The statute in question, A.C.A. 11-5-114 (Supp. 1987), provides:
 (a) It shall be unlawful for any employer providing pharmacy services, including prescription drugs, to employees as a part of a health care program to require the employee to obtain drugs from an out-of-state mail order pharmacy as a condition of obtaining the employer's payment for the prescription drugs or to impose upon an employee not utilizing an out-of-state mail order pharmacy designated by the employer a co-payment fee or other condition not imposed upon employees utilizing the designated out of state mail order pharmacy.
(b)(1) This section shall not apply to any employer who:
 (A) Offers, as a part of a health care program, health insurance coverage to employees which provides for payment of an equal portion of the cost to the employee for prescription drugs regardless of the supplier, if the health insurance plan allows the employee freedom of choice in determining where the drugs are purchased; or
 (B) Had in force effective January 1, 1987, a mail order prescription drug plan for employees.
 (2) The provisions of this section shall not be applicable to health care programs in existence on March 30, 1987.
 (C) Any person or entity violating the provisions of this section shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00). Each violation shall constitute a separate offense.
The statute requires the health care provider to provide and pay for prescription drugs on an equal basis, without regard to whether the drugs are obtained locally, or through an out-of-state mail order pharmacy, (which is presumably much cheaper). The statute prohibits the requiring of the cheaper out-of-state pharmacy supplier.
I. PREEMPTION BY ERISA
The issue of whether a state law which regulates the providing of prescription drugs by a health care plan is preempted by the provisions of ERISA, was squarely discussed in General Motors Corporation, et al. v. Caldwell, 647 F. Supp. 585 (N.D.Ga. 1986). The act in issue in Caldwell regulated contracts between plan administrators and participating pharmacies, and also sought to establish a pricing formula whereby plan beneficiaries could not obtain prescription drugs at a more favorable rate than persons not enrolled in a plan. The court noted that:
ERISA preempts any and all state laws insofar as they may now or hereafter relate to any employee benefit plan. 29 U.S.C. § 1144(a). The Supreme Court has explicated the scope of ERISA preemption in Shaw v. Delta Airlines, 463 U.S. 85 (1983). Here, the Court stated that:
[a] law `relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or a reference to such a plan.
647 F. Supp. at 587.
The Court in Caldwell went on to hold that "the Act clearly relates to employee benefit plans and is subject to preemption by ERISA." 647 F. Supp. at 587. The court came to this conclusion in light of the United States Supreme Court's decision in Metropolitan Life Insurance Company v. Massachusetts, 471 U.S. 724
(1985), that even a state statute which has only an indirect impact on employee benefit plans will be preempted by ERISA. In my opinion a similar conclusion must be reached here. The statute clearly relates to an employee benefit plan and is therefore preempted.
The court in Caldwell was then faced with the question of whether the Georgia law came within the exemption to the ERISA preemption provision, (29 U.S.C. § 1144(2)(B)), which operates so as not to preempt any law regulating insurance, banking or securities. The court, analyzing the question under three factors enunciated in Union Labor Life Insurance Group Life and Health Insurance Company v. Royal Drug Company, 440 U.S. 205 (1979) reh. denied, 441 U.S. 971
(1979), held that the law in question did not regulate the business of insurance. In my opinion, the same conclusion must be reached with respect to A.C.A. 11-5-114. It is not a law which regulates the business of insurance, but is a law which "relates to" an employee benefit plan. The statute is thus preempted by the provisions of ERISA, and is unconstitutional under the Supremacy Clause.
The ERISA preemption provision, however, does not preempt state laws which would govern three types of plans listed in 29 U.S.C. § 1003(b). These include governmental plans, church plans, and plans maintained solely for the purpose of complying with the workmen's compensation, unemployment compensation, or disability insurance laws. With respect to these types of plans, the Arkansas statute is not preempted and governs if it is otherwise constitutional. This now becomes our inquiry.
You have noted several possible constitutional infirmities with the statute including violations of equal protection, the anti-trust laws, and the impairment of the obligation of contracts. You have also indicated that a first amendment issue may be presented. It is my opinion that none of these constitutional bases present a tenable theory for challenging the statute. Violations of equal protection are rarely found in cases involving economic regulations, (which presumably is the purpose of 11-5-114), New Orleans v. Dukes, 427 U.S. 297 (1976); the federal anti-trust laws do not govern governmental action, United States v. Yellow Cab Co., 69 F. Supp. 170 (N.D.Ill. 1946), rev on other grounds 332 U.S. 218 (1947); impairment of the obligation of contracts is not found with a statute only retrospective in effect. U.S. Trust Co. of New York v. New Jersey, 431 U.S. 1
(1977) reh. denied 431 U.S. 975 (1977); and in my opinion on first amendment issue is presented.
Whether 11-5-114 places an undue burden on interstate commerce under the Commerce Clause is entirely another question. Even though the law might be deemed non-discriminatory, as it does not prohibit the use of out of state mail order pharmacies but just requires similar payment provisions for local pharmacies, it still affects interstate commerce. Without the statute in place, health care plan administrators would continue to furnish the beneficiaries. With the statute in place, plan administrators are required to pay equally for pharmaceuticals supplied to beneficiaries who choose to obtain them locally. It is conceivable that many beneficiaries would obtain them locally because of the convenience and speed of delivery, and because paid for to the same extent by the plan as mail order pharmaceuticals. Because those beneficiaries would purchase drugs locally by virtue of the act, that same amount of prescription drugs will not be sold in interstate commerce. Thus, the statute affects interstate commerce. This fact is significant in light of the Supreme Court's statement concerning the Commerce Clause in Freeman v. Hewitt, 329 U.S. 429 (1946):
 This limitation on State power . . . does not merely forbid a state to single out interstate commerce for hostile action. A state is also precluded from taking any action which may fairly be deemed to have the effect of impeding the free flow of trade between states.
329 U.S. at 252.
It being acknowledged that the law affects interstate commerce, the inquiry becomes whether it places an "undue burden" upon it. Analysis of this question must take into account the purposes of the legislation, as it has been held in Huron Portland Cement Co. v. Detroit, 362 U.S. 440 (1960) that:
 In determining whether the state has imposed an undue burden on interstate commerce it must be borne in mind that the Constitution when `conferring upon Congress the regulation of commerce . . . never intended to cut the states off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation omitted].
 362 U.S. at 443, 444.
The regulation in issue in Huron concerned the control of pollution. Conversely, the court noted in Hood v. Dumond, 336 U.S. 525
(1949) that:
 This court consistently has rebuffed attempts of states to advance their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state, while generally supporting their right to impose even burdensome regulations in the interest of local health and safety.
 336 U.S. at 535.
It appears that the Arkansas statute was not enacted to further public health and safety. There is no indication that it addresses any concern about the quality or safety of the out of state mail order drugs. It is my opinion that the act is aimed at competition, as evidenced by its cost regulation. This fact does not place the act in good constitutional stead.
Similarly, the aim of the legislation is the key factor in determining whether a proper exercise of the police power exists. This concept was the sole basis for the opinion in Union Carbide and Carbon Corp. v. White River Distrib., 224 Ark. 558, 275 S.W.2d 455
(1955). At issue in Union Carbide was whether the "Fair Trade Act," which in part gave a supplier the right to fix the price of its product in Arkansas, was an abuse of the state's police power. The court found an abuse of the power, and stated:
 Full and free competition is the long recognized basis of our economy. . . We can think of no way in which the public welfare was being jeopardized under the system of free competition prior to 1937 which suggested the necessity or advisability of imposing the restrictions contained in [the act], and we can think of none that exists today. To the contrary, we believe it is generally recognized that the interest of the public is best served by the opportunity to buy commodities in a freely competitive market. We recognize that competition is preserved to a degree under the provisions of the Act, but it must be admitted that it is also restricted to a degree. The Act can be sustained only if it enhances the general welfare and not if it restricts it to only a small extent.
 224 Ark. at 562, 563.
The court also quotes a passage from 11 Am. Jur., p. 1077 which states:
 The mere assertion by the legislature that a statute relates to the public health, safety or welfare does not in itself bring that statute within the police power of the state, for there must always be an obvious and real connection between the actual provisions of the police regulations and its avowed purpose and the regulation adopted must be reasonably adapted to accomplish the end sought to be attained. A statute or ordinance which has no real, substantial or rational relation to the public safety, health, moral, or general welfare is a palpable invasion of rights secured by fundamental law and cannot be sustained as a legitimate exercise of the police power.
 224 Ark. at 566.
It is therefore my opinion that the statute in question, because it is aimed at competition rather than some aspect of the public welfare, is a questionable exercise of the state's police power, and a court faced with the question could properly decide that it is unconstitutional as preempted by ERISA, and to the extent not preempted, unconstitutional under the Commerce Clause.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.