GENERAL MOTORS CORPORATION; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; and Metropolitan Life Insurance Company

v.

Johnnie CALDWELL, Commissioner, Insurance Department of the State of Georgia: Michael J. Bowers, Attorney General, State of Georgia; and Joe Frank Harris, Governor, State of Georgia.

BURROUGHS CORPORATION and the Travelers Insurance Company

v.

Johnnie CALDWELL, Commissioner, Insurance Department of the State of Georgia; and Michael J. Bowers, Attorney General, State of Georgia.

Civ. Nos. C84–331, C84–1806.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 10, 1986.

Stephanie B. Manis, James C. Pratt, Asst. Attys. Gen., Atlanta, Ga., for defendants.

Richard A. Schneider, William A. Clineburg, Jr., King & Spalding, Atlanta, Ga., for plaintiffs.

A. Stephen Clay, Thomas H. Christopher, Kilpatrick & Cody, Atlanta, Ga., for plaintiffs Burroughs Corp. and Travelers Ins. Co.

ORDER

ORINDA D. EVANS, District Judge.

This action challenging the validity of the Georgia Third-Party Prescription Program Law of 1983, O.C.G.A. § 26–4–140 *et seq.*, is before the court on Plaintiffs and Defendants' motions for summary judgment.

Plaintiffs' motions to strike and for oral hearing are also before the court. With respect to Plaintiffs' motion to strike portions of the Argo and Braden affidavits, the court grants in part and denies in part Plaintiffs' motion as is more fully set forth herein.

Plaintiffs General Motors Corporation ("General Motors") and Burroughs Corporation ("Burroughs") both maintain employee benefit plans providing benefits, including prescription drug benefits, to their employees. General Motors' plan is administered by Metropolitan Life Insurance Company ("Metropolitan") and Burroughs' plan is administered by The Travelers Insurance Company ("Travelers").

The plans provide prescription drug benefits in the following manner. When an employee covered by the employee benefit plan buys prescription drugs, he may do so from either a "participating pharmacy" or a "non-participating pharmacy." A participating pharmacy is one which has contracted with the employee benefit plan administrator for the provision of prescription drugs to plan beneficiaries. The contract between the participating pharmacy and plan administrator is known as a participating or provider agreement. When an employee buys prescription drugs from a participating pharmacy, he or she pays only a uniform, flat fee. The participating pharmacy then recovers any additional payment for the prescription drugs from the plan administrator pursuant to the terms of the participating agreement. The participating pharmacy generally is reimbursed for its actual cost for the drugs plus a standard fee for dispensing them.

A non-participating pharmacy is one which has not contracted with the plan administrator for the provision of prescription drugs to plan beneficiaries. When an employee buys prescription drugs from a non-participating pharmacy, he or she pays the full cost of the drug and then seeks reimbursement of a portion of the cost of the drug from the plan administrator. As a general rule, employees' out-of-pocket expenditures are less for purchases from participating pharmacies than from non-participating pharmacies.

The Georgia Third Party Prescription Program Law of 1983, (the "Act"), challenged by Plaintiffs in this action became effective on January 1, 1984. The Act regulates the employee benefits plans maintained by General Motors and Burroughs and also regulates the contracts between participating pharmacies and the plan administrators. The Act requires that employee benefit plans which do not have expiration dates must be submitted to the Commissioner of Insurance for the State of Georgia for approval by March 1, 1984. Review by the Commissioner is designed to insure, *inter alia*, that a pricing formula is established such that plan beneficiaries do not buy prescription drugs at a more favorable rate than those not enrolled in a plan. The Act also regulates who shall provide certain benefits to employees, how the employee benefit plan administrator shall conduct certain audits, and how disputes between employee benefit plans and beneficiaries and between plans and pharmacies shall be handled. The Act further regulates how much the pharmacies shall be paid and how promptly they shall be paid. Enforcement of the Act has been preliminarily enjoined pursuant to an order of this court.

The question before the court on both Plaintiffs' and Defendants' motions for summary judgment is whether the Act affects employee benefit plans protected by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, and is therefore preempted by ERISA and void under the supremacy clause of the United States Constitution. Plaintiffs argue that the Act is preempted by ERISA because it "relates to" employee benefit plans pursuant to 29 U.S.C. § 1144(a) and is not excluded from preemption by 29 U.S.C. §§ 1144(b)(2)(A), saving state laws from regulating insurance from preemption. Defendants argue that the Act does not "relate to" an employee benefit plan, and even if it did, it regulates

insurance and, therefore, is saved from preemption by ERISA.

■ In their statement of undisputed material facts, Defendants introduce facts to show that the State has an interest in regulating participating agreements to protect consumers and independent retail pharmacists. The question of ERISA preemption of the Act does not involve a balancing of the interest of the State and employee benefit plan beneficiaries. Nor does it involve an inquiry into the social desirability of the proposed legislation. In determining ERISA preemption, the court examines whether the state statute "relates to" employee benefit plans and whether the statute is saved from preemption by an explicit savings clause. To the extent that Defendants' statement of undisputed material facts exceeds the limited scope of this inquiry, the facts submitted by Defendants are not relevant to the issue before the court.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has explicated the scope of ERISA preemption in *Shaw v. Delta AirLines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Here, the Court stated that:

> [a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan....

*Id.,* at 97, 103 S.Ct. at 2900. In *Shaw,* the Court held that the New York Human Rights Law prohibiting employers from structuring employee benefit plans in a manner which discriminates on the basis of pregnancy relates to employee benefit plans and is, therefore, preempted by ERISA.

The Court has also found that a Massachusetts statute requiring insurers offering group health insurance to provide certain mental health benefits is preempted by ERISA because it relates to employee benefit plans. *Metropolitan Life Insurance Company v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The Court stated that even though the Massachusetts is not "denominated a benefit plan law, it bears indirectly but substantially on all insured benefit plans" because it requires them to purchase insurance they might not have purchased otherwise. *Id.,* at 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728, 740 (1985). Thus, a state statute having indirect impact on employee benefit plans will be preempted by ERISA. Although the Court concluded that the Massachusetts statute related to employee benefit plans, it concluded that the statute was excluded from preemption because it regulated insurance.

■ In the case at hand, the Act clearly relates to employee benefit plans and is subject to preemption by ERISA. Although the Act does not specifically refer to employee benefit plans, it clearly has an indirect but substantial relation to them. The Act regulates the discount features currently provided to plan beneficiaries by the participating agreements. The Act would require that the reimbursement rate paid to participating pharmacies "shall not be less than the prevailing rates paid by consumers who are not enrollees." O.C. G.A. § 26–4–144. Thus, the Act strikes at the heart of a feature of employee benefit plans. It also creates an administrative scheme with which plan administrators, plan beneficiaries, and participating pharmacies must comply. By imposing substantial and new requirements on the plans, the Act would require plan administrators to alter the structure of their plans in Georgia. National uniformity among plans would be disrupted. Furthermore, although the Act is not specifically denominated as a statute regulating employee benefit plans, it clearly targets them. The participating agreements regulated by the Act are commonly entered into by employee benefit plans and pharmacies.

In a letter to the Office of Comptroller General, addressing the question of ERISA preemption of the Act, Enforcement Officer Greg Futch acknowledged that the "key to our enforcement seems to be employee benefit plans." Furthermore, Attor-

ney General Bowers concluded in his opinion issued on the question of ERISA preemption of the Act that it "clearly relates to" employee benefit plans because it "regulates a type of health benefit whereby a person's pharmaceuticals are paid [for] by another party." 82 Op.Att'y Gen. 187 (1983).

The court rejects Defendants' contention that the Second Circuit's opinion in *Rebaldo v. Cuomo*, 749 F.2d 133 (2nd Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985), requires a conclusion that the Act does not relate to employee benefit plans. In *Rebaldo*, the court found that ERISA did not preempt a New York statute setting certain prices for certain hospital services for all purchasers of such services. The court concluded that the New York statute, which effectively prevented employee benefit plans from negotiating a reduced rate with hospitals, did not "relate to" employee benefit plans simply because it increased the plan's cost of doing business and because it did "not affect the structure, administration or the type of benefits provided by an ERISA plan." *Id.,* at 139. However, unlike the New York statute in *Rebaldo* whose sole relation to employee benefit plans was to increase the cost of doing business, the Act before the court today does not simply increase the cost of doing business for employee benefit plan administrators. The Act would also affect the structure, administration *and* the type of benefits provided by the plans. Moreover, *Rebaldo* pre-dates the *Metropolitan Life* decision in which the Supreme Court reiterated that indirect impact on an employee benefit plan brings a state statute within the scope of ERISA preemption.

In light of the Act's substantial impact on and relation to employee benefit plans, the Act "relates to" such plans under 29 U.S.C. § 1144(a). Unless the Act is saved from preemption by the insurance savings clause in 29 U.S.C. § 1144(b)(2)(A), it is preempted by ERISA.

State statutes regulating insurance are saved from preemption by ERISA. In its January 4, 1984 order, this court held that the Act does not regulate insurance. In light of recent Supreme Court interpretations of the insurance savings clause in *Metropolitan Life, supra,* the reasoning underlying the January 4, 1984 order remains persuasive on the question of whether or not the Act regulates insurance.

■ In *Metropolitan Life,* the Court confirmed that the ERISA insurance savings clause should be interpreted in conjunction with the McCarran-Ferguson Act to determine whether a state statute regulates insurance and is therefore, excluded from ERISA preemption. *Metropolitan Life,* 471 U.S. 724, 740–744, 744, n. 21, 105 S.Ct. 2380, 2390–2391, 2392, n. 21, 85 L.Ed.2d 728, 741–742, 743, n. 21. In its January 4, 1984 order, this court had previously indicated that the ERISA savings clause and the McCarran-Ferguson Act are to be construed together in determining what constitutes insurance for the purposes of ERISA preemption. In *Metropolitan Life,* the Court recognized that the ERISA insurance savings clause and the McCarran-Ferguson Act "serve the same federal policy and utilize similar language to define what is left to the States." *Id.,* 471 U.S. at 744, n. 21, 105 S.Ct. at 2392, n. 21, 85 L.Ed.2d at 743, n. 21. The Court further stated that the ERISA savings clause "appears to have been designed to preserve the McCarran-Ferguson Act's reservation of the business of insurance to the States." *Id.,* 471 U.S. at 744 n. 21, 105 S.Ct. at 2392, n. 21, 85 L.Ed.2d at 743, n. 21. Accordingly, it is appropriate to look to the interpretation of what constitutes the "business of insurance" under the McCarran-Ferguson Act in order to determine the applicability of the ERISA insurance savings clause.

In the McCarran-Ferguson Act, 15 U.S.C. §§ 1011, *et seq.,* Congress declared that regulation of the "business of insurance" is in the public interest, and that "silence on the part of Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." Many of the cases construing the McCarran-Ferguson Act arose in the con-

text of antitrust challenges since the McCarran-Ferguson Act provides that the Sherman Act and Clayton Act do not apply to the "business of insurance."

The three criteria used to identify whether a specific practice constitutes the "business of insurance" for the purposes of the McCarran-Ferguson Act are as follows. First, "whether the practice has the effect of transferring or spreading a policyholders's risk; second, whether the practice is an integral part of the policy relationship between the insurer or insured; and third, whether the practice is limited to entities within the insurance industry." *Union Labor Life Insurance Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982). *See also, Group Life & Health Insurance Company v. Royal Drug Company,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), *reh denied,* 441 U.S. 917, 99 S.Ct. 2017, 60 L.Ed.2d 389 (1979).

This court previously applied these criteria to determine whether the provision of prescription drug benefits through participating agreements constitutes the "business of insurance" for the purposes of the McCarran-Ferguson Act. In its January 4, 1984 order, this court concluded that the practice does not constitute the "business of insurance." No evidence suggests to the court that this previous analysis should be changed.

The participating agreements clearly do not relate to risk allocation. The plan administrator simply provides a benefit for employee benefit plan beneficiaries through the participating agreements with pharmacies. The Supreme Court has specifically considered whether participating pharmacy agreements, such as those at issue in this case, constitute the "business of insurance" in *Group Life & Health Insurance Co. v. Royal Drug Co., supra.* The Court stated that:

> The Pharmacy Agreements thus do not involve any underwriting or spreading of risk, but are merely arrangements for the purchase of goods and services by Blue Shield.

*Royal Drug,* 440 U.S. 205, 214, 99 S.Ct. 1067, 1075, 59 L.Ed.2d 261 (1979). Thus, these participating agreements do not meet the first criterion for identifying the "business of insurance."

The second criterion asks whether the practice is an integral part of the relationship between insurer and insured. The participating agreements are contracts between the plan administrator and the pharmacy. As the Court stated in *Royal Drug,* the participating agreements "are not 'between insurer and insured.' They are separate contractual arrangements between Blue Shield and pharmacies engaged in the sale and distribution of goods and services other than insurance." *Id.,* at 216, 99 S.Ct. at 1075. As the agreements are with parties outside the insurance industry, they do not meet the second criterion for identifying the "business of insurance."

The third criterion involves the question whether the practice is limited to entities within the insurance industry. The Act defines "third party prescription programs" as:

> any system of providing payments or reimbursement of payments made for pharmaceuticals pursuant to a contract between a pharmacy and *another party, including insurance companies and administrators of programs,* who are not consumers of the pharmaceuticals under that contract and *shall include, without being limited to, insurance plans* whereby an enrollee receives pharmaceuticals which are paid for by insurance companies or administrators, or by an agent of his employer, or by others.

O.C.G.A. § 26-4-142(11) (emphasis added). The Act itself recognizes that the provision of prescription drugs through participating agreements is not a practice which is limited to the insurance industry. Thus, the practice does not meet the third criterion for identifying practices constituting the "business of insurance."

In light of the foregoing analysis, it is clear that the provision of prescription drugs to employee benefit plan beneficiaries through the use of participating

agreements does not constitute the "business of insurance" as that term has been defined by the Supreme Court in *Pireno, supra,* and *Royal Drug, supra.* As the Supreme Court has recognized in *Metropolitan Life, supra,* that the McCarran-Ferguson Act "business of insurance" should be read in conjunction with the ERISA savings clause use of "insurance," the criteria used to identify the "business of insurance" are informative as to what constitutes "insurance" for the purpose of ERISA preemption. Therefore, the third party prescription drug programs regulated by the Act do not constitute "insurance" for the purposes of exemption from ERISA preemption.

As the Act both relates to employee benefit plans and the Act does not regulate insurance so as to be saved by ERISA preemption, Plaintiffs' motion for summary judgment is granted and Defendants' motion for summary judgment is denied.

Plaintiffs have also moved to strike portions of Eugene Argo's affidavit and Larry Braden's affidavit submitted by Defendants in support of their motion for summary judgment on the grounds that these portions contain inadmissible hearsay, conclusions, or speculations. Plaintiffs cite the Fed.R.Civ.P. 56(e) provision that affidavits submitted in support of summary judgment motions shall contain "facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated." Plaintiffs also cite the Eleventh Circuit holding that supporting affidavits cannot contain statements of conclusory facts. *Beard v. Annis,* 730 F.2d 741, 743 (11th Cir.1984).

With respect to Eugene Argo's affidavit, any imperfections in the original affidavit have been corrected by the additional affidavit filed by Defendants July 17, 1986. Therefore, Plaintiffs' motion to strike portions of paragraph 2 and 3 and all of paragraphs 5, 8, and 9 is hereby denied. With respect to Larry Braden's affidavit, Plaintiffs have moved to strike paragraphs 6 and 7 on the grounds that they are conclusory and beyond the personal knowledge of Mr. Braden, and paragraphs 8, 9, 10, 16, 17 and 19 on the grounds that they are conclusory and speculative. The court agrees that the above-stated portions of the Braden affidavit are conclusory, beyond Mr. Braden's personal knowledge, and speculative. Defendant has not opposed Plaintiffs' motion to strike these portions of the Braden affidavit. Accordingly, the court grants Plaintiffs' motion to strike these portions of the Braden affidavit.

In summary, the court hereby GRANTS Plaintiffs' motion for summary judgment and DENIES Defendants' motion for summary judgment. The court DENIES Plaintiffs' motion to strike portions of the Argo affidavit and GRANTS Plaintiffs' motion to strike portions of the Braden affidavit. Plaintiffs' motion for oral hearing is DISMISSED as moot.