## STUART CIRCLE HOSPITAL CORP., Plaintiff,

v.

## AETNA HEALTH MANAGEMENT, et al., Defendants.

### File No. 91–736.

United States District Court, E.D. Virginia, Richmond Division.

July 22, 1992.

J. Scott Sexton and William Raymond Rakes, Gentry, Locke, Rakes & Moore, Roanoke, Va., for plaintiff.

Laura Graham Fox and John Bowers McCammon, Wright, Robinson, McCammom, Osthmer & Tatum, Richmond, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, the Defendant's motion is granted and the case is hereby dismissed with prejudice.

## BACKGROUND

Stuart Circle Hospital Corporation ("Stuart Circle") seeks a judgment against the Defendants Aetna Life Insurance Co. and Aetna Health Management (collectively "Aetna") declaring that Aetna's actions in implementing and operating a preferred provider organization (the "Aetna PPO") are in violation of Va.Code § 38.2–3407 (the "PPO Statute") and enjoining further violations or operations until the Aetna PPO is established in compliance with the PPO Statute.

Defendant Aetna variously administers and insures employee benefit plans in Virginia. Among the various products that Aetna offers its employee benefit plan customers in the Richmond area is a Preferred Provider Program, the main feature of which is the Aetna PPO. Aetna offers the Preferred Provider Program only to employee benefit plans.

The Aetna PPO in the Richmond area was originally established by Aetna in 1987, and is now managed by Aetna Health Management ("AHM"). AHM maintains the Aetna PPO through contracts with selected health care providers who agree (1) to provide services at discounts from their normal fees to individuals covered under employee benefit plans administered or insured by Aetna; and (2) to comply with the utilization review requirements of the employee benefit plans. In return, these providers expect an increase in patient volume because the employee benefit plans are designed to provide financial incentives for plan participants to select the preferred provider. AHM currently has preferred provider contracts with six Richmond area hospitals: Retreat, Richmond Memorial, St. Mary's, Henrico Doctors', Chippenham, and Johnston–Willis.

Currently, over 120 Richmond area employee benefit plans utilize Aetna's Preferred Provider Program. Some of these plans are self-insured, in which case Aetna acts as administrator of the employee benefit plan. In other cases, Aetna acts as both insurer and administrator of the employee benefit plan. However, the offers and negotiations between Aetna and the hospitals selected for the PPO did not involve any employee benefit plan, employer, or sponsor of an employee benefit plan. Rather, Aetna and the hospitals were the sole contracting parties in the process.

Stuart Circle claims that is was unreasonably excluded from the Aetna PPO, not because it could not meet Aetna's "terms and conditions," but because it was not a member of Aetna's HMO in Richmond. Stuart Circle demands that Aetna comply with the requirements of Virginia law governing the establishment of a PPO by an insurer.

Prior to determining the merits of the case, the Court required the parties to brief the issue of whether Plaintiff's claim may be preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq. See HCA Health Services v. Metropolitan Life Ins. Co.,* 957 F.2d 120, 125 n. 1 (4th Cir.1992) ("The District Court erred in interpreting the Virginia statute before deciding if it was preempted by ERISA.").

## ISSUE

This dispute involves the application and interpretation of Va.Code Ann. § 38.2–

3407(B). The question presented is whether this provision is preempted by ERISA. To resolve this question, the Court must determine (1) whether § 38.2–3407(B) "relates to" employee benefit plans and thus comes under the purview of ERISA and (2) whether Virginia's PPO statute regulates the "business of insurance" as this term has been defined under the McCarran–Ferguson Act and thus comes within ERISA's "savings clause."

## DISCUSSION OF AUTHORITY

The Plaintiff argues that Va.Code § 38.2–3407(B) does not "relate to" an employee benefit plan, and even if it did, it regulates insurance and, therefore, is saved from preemption by ERISA. The Defendant argues the very opposite—that the Virginia statute is preempted by ERISA but does not regulate the "business of insurance."

## I. THE PPO STATUTE

The PPO Statute, Section 38.2–3407, provides as follows:

A. One or more insurers may offer or administer a health benefit program under which the insurer or insurers may offer preferred provider policies or contracts that limit the numbers and types of providers of health care services eligible for payment as preferred providers.

B. Any insurer shall establish terms and conditions that shall be met by a hospital, physician or type of provider listed in § 38.2–3408 in order to qualify for payment as a preferred provider under the policies or contracts. These terms and conditions shall not discriminate unreasonably against or among such health care providers. No hospital, physician or type of provider listed in § 38.2–3408 willing to meet the terms and conditions offered to it or him shall be excluded. Neither differences in prices among hospitals or other institutional providers produced by a process of individual negotiations with providers based on market conditions or price differences among providers in different geographical areas, shall be deemed unreasonable discrimination. The Commission shall have no jurisdiction to adjudicate controversies growing out of this subsection.

## II. PREEMPTION UNDER ERISA

An employee welfare plan is defined under ERISA as a plan which provides to employees "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability [or] death," whether these benefits are provided "through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1). Plans may self-insure or they may purchase insurance for their participants. Plans that purchase insurance—so-called "insured plans"—are directly affected by state laws that regulate the insurance industry.

ERISA imposes a variety of substantive requirements relating to participation, funding, and vesting upon welfare plans, but does not regulate the substantive content of such plans. Thus, ERISA contains almost no federal regulation of the terms of benefit plans. It does, however, contain a broad preemption provision:

> Except as provided in subsection (b) of this section (the savings clause), the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.

ERISA § 514(a), 29 U.S.C. § 1144(a). Thus, any state law that "relate[s] to" an "employee benefit plan" is preempted,[1] unless it fits within one of the enumerated categories of permissible state regulation.

The United States Supreme Court has interpreted ERISA § 514(a) quite broadly. *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). It has repeatedly recognized that the words "relate to . . . express a broad preemptive purpose." *Mo-*

---

**1.** "The Supremacy Clause of Article VI of the Constitution provides Congress with the power to pre-empt state law." *Louisiana Pub. Serv.* *Comm'n v. FCC,* 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986).

*rales v. Trans World Airlines*, —— U.S. ——, ——, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992).

■ A state law "relate[s] to" an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (holding that the New York Human Rights Law prohibiting employers from structuring employee benefit plans in a manner which discriminates on the basis of pregnancy relates to employee benefit plans and is, therefore, preempted by ERISA). Preemption is, moreover, not limited to "state laws specifically designed to affect employee benefit plans," nor is it limited to state laws that relate to subject matters addressed by ERISA. *Id.* at 98–99, 103 S.Ct. at 2900–2901.[2] Even laws that have only indirect effects on private employee benefit plans are preempted if they "relate" to such a plan. *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981).

Examination of Virginia Code § 38.2–3407 in light of these governing principles compels the conclusion that it is a law that "relate[s] to" employee benefit plans. By contrast, in arguing that the PPO Statute does not relate to employee benefit plans, the Plaintiff stresses that the provision "does not directly regulate the content of an employee benefit plan," and that "[t]he

existence of an employee benefit plan is not central to or determinative with respect to the application" of the PPO Statute. (Pl. Mem. at 10.) Plaintiff then tries to minimize the statute's effect on employee benefit plans by describing the effect as "incidental" or "derivative." (Pl.Mem. at 5, 10, 11, 15, and 17) These points are not well taken.

Plaintiff's narrow reading of section 514(a) of ERISA ignores controlling precedent and is at odds with the purpose behind ERISA preemption. The Supreme Court specifically rejected an interpretation of "relate[s] to" that would have limited section 514(a) to "state laws specifically designed to affect employee benefit plans," *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900, and has held that even indirect state action bearing on pensions may encroach upon the area of exclusive federal concern. *Alessi*, 451 U.S. at 525, 101 S.Ct. at 1907. So long as a state law has a "connection with or reference to" an employee benefit plan, then the law relates to the plan, and it is of no consequence whether the effect on the plan is direct or indirect.[3]

■ Virginia's PPO Statute does have a clear connection to and effect on employee benefit plans. First, on its face, the statute states that an insurer may offer or administer a "health benefit program." This language appears to clearly contemplate employee benefit plans. Moreover,

---

**2.** Of course, § 514(a) preempts state laws only insofar as they relate to plans covered by ERISA.

**3.** The Court rejects the Plaintiff's contention that the Second Circuit's opinion in *Rebaldo v. Cuomo*, 749 F.2d 133 (2d Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985), requires a conclusion that the PPO Statute does not relate to employee benefit plans. In *Rebaldo*, the Court found that ERISA did not preempt a New York statute setting certain prices for certain hospital services for all purchasers of such services. The court concluded that the New York statute, which effectively prevented employee benefit plans from negotiating a reduced rate with hospitals, did not "relate to" employee benefit plans simply because it increased the plan's cost of doing business and because it did "not affect the structure, administration or the type of benefits provided by an ERISA plan." *Id.* at 139.

However, unlike the New York statute in *Rebaldo*, whose sole relation to employee benefit plans was to increase the cost of doing business, the PPO Statute before the Court today does not simply increase the cost of doing business for employee benefit plan administrators. Virginia's PPO Statute would also affect the structure, administration, and the type of benefits provided by the plans. Moreover, *Rebaldo* predates the Supreme Court's decision in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), in which the Court reiterated that even indirect impact on an employee benefit plan brings a state statute within the scope of ERISA preemption. And in fact, the Second Circuit itself has questioned the continuing vitality of *Rebaldo*. *See Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 9 n. 3 (2d Cir.1992).

the chapter of the Virginia Code that includes section 38.2–3407 applies to *group* accident and sickness policies. *See* Va. Code §§ 38.2–3400(A), 38.2–109, and 38.2–3401. ERISA plans are, of course, group plans. *See* 29 U.S.C. § 1002(1).

Secondly, even though the PPO Statute does not directly regulate employee benefit plans, the statute affects those plans in such a manner as to fit within ERISA's preemptive reach. Section 38.2–3407 goes to the sum and substance of employee benefit plans: the delivery of promised benefits. *See General Motors Corp. v. Caldwell*, 647 F.Supp. 585, 587 (N.D.Ga.1986) (statute regulating establishment of participating pharmacy agreements "strikes at the heart of a feature of employee benefit plans"). The reason why Stuart Circle wants to be included in Aetna's PPO is precisely so it can gain entree into the lucrative business of supplying health care to employee benefit plans. Preferred provider arrangements, the target of the statute, are creatures of employee benefit plans. They are the principal means by which employee benefit plans deliver their promised medical benefits; as such, regulation of the structure of the PPO network necessarily affects the benefit plans and thus "relate[s] to" them.

By regulating the makeup of the PPO networks, the PPO Statute constrains how health benefits may be structured under an employee benefit plan and interferes with the discretion of the plan sponsor. Under the PPO Statute, an employee benefit plan which is insured or which chooses an insurer to administer the plan will have to include providers as preferred providers who would not otherwise be included. Thus, the statute prohibits effective limitation of the hospital provider network, and a critical cost containment feature of the employee benefit plans subscribing to Aetna's Preferred Provider Program is greatly diminished.[4]

The administration of the employee benefit plans is similarly affected. Whether a provider is "preferred" will affect the formula for benefit payments by employee benefit plans with respect to services rendered by that provider to plan participants. Through its contract with the Aetna PPO, the provider becomes directly "connected with" employee benefit plans administered or insured by Aetna. That a provider is "preferred" changes both the manner and amount of benefits paid by the employee benefit plan.

The connection or effect that the PPO Statute has on employee benefit plans can be easily illustrated. Imagine Employee Benefit Plan X organizes a PPO network with four Richmond area health care providers. Not included in this list, for reasons peculiar to Plan X, is Stuart Circle Hospital. Plan X secures a 15% discount on all services for its beneficiaries. This discount is offered because the included hospitals expect that the beneficiaries of Plan X will have a great incentive to choose one of the network hospitals for their health care needs. Plan X's participants may go to another provider, but they will have to pay the difference in costs out of their own pockets. To administer this PPO, Employee Benefit Plan X hires Aetna, an insurance company. Under the mandate of Va.Code § 38.2–3407, if a district court has to order that Stuart Circle Hospital and other comparable health care providers must be included in the limited network, then clearly Plan X's benefit scheme will be effected. For instance, the original providers may determine to provide only 10% discounts or may impose other conditions. The end result is that the system carefully constructed by Plan X will be changed. For this reason, Virginia's PPO Statute, in both purpose and effect, "relate[s] to" employee benefit plans.

Indeed, a number of courts have recognized that state statutes regulating preferred provider arrangements necessarily relate to employee benefit plans. For instance, in *General Motors Corp. v. Cald-*

---

**4.** As this Court found in *HCA Health Services v. Metropolitan Life Ins. Co.*, "[t]he exclusion of some providers is a necessary prerequisite of a limited provider network. It is by limiting the number and types of providers included in a PPO that an insurer is able to implement cost reductions in services for health beneficiaries." 752 F.Supp. 202, 204 (E.D.Va.1990).

*well,* 647 F.Supp. 585 (N.D.Ga.1986), the Georgia statute at issue, like the Virginia statute here, required that all providers (pharmacies) willing to meet the terms of inclusion be entitled to become participating pharmacies. Ga.Code Ann. § 26–4–144(a). The court in *Caldwell* concluded that the Georgia law "clearly has an indirect but substantial relation to [employee benefit plans]" because it "regulates the discount features currently provided to plan beneficiaries" and creates an administrative scheme with which plan administrators have to comply. *Caldwell,* 647 F.Supp. at 587. The court noted that "although the Act is not specifically denominated as a statute regulating employee benefit plans, it clearly targets them." *Id.; see also Blue Cross & Blue Shield v. Peacock's Apothecary, Inc.,* 567 F.Supp. 1258, 1276 (N.D.Ala.1983) (holding in a similar case that "[a]lthough the Act directly regulates the agreements and relationships *between insurers and pharmacies,* it effectively regulates what employers and employees can and cannot include in employee benefit plans." (emphasis added)). The same can be said about Virginia's PPO Statute.

*Adnan Varol, M.D., P.C. v. Blue Cross & Blue Shield,* 708 F.Supp. 826 (E.D.Mich. 1989), is also instructive. There, providers of mental health care services brought suit against Blue Cross alleging that a program offered by General Motors to certain employees, which required preauthorization of mental health care services, violated certain state laws. The participating mental health care providers had contracted with Blue Cross, as the administrator of the General Motors plan, to render services to persons covered under the program in accordance with the program's managed care requirements, and to accept reimbursement for services rendered in accordance with the program's fee schedules.

The *Adnan Varol* Court held that the state law claims were preempted by ERISA because they went directly to the essence of the employee benefit plan—the preau-

thorization and managed care requirements—even though the contracts at issue were between Blue Cross and the providers. "[T]he provider contracts between plaintiffs and [Blue Cross] are merely the means for carrying out the benefit plan agreed to between GM and the U.A.W." *Id.* at 832. Similarly, in this case, Stuart Circle seeks to become a party to a preferred provider contract offered by Aetna. However, as the *Adnan Varol* Court notes, these contracts are merely the means for carrying out the employee benefit plans that utilize the Aetna PPO.

In short, the PPO Statute, Va.Code § 38.2–3407, "relate[s] to" employee benefit plans and is preempted under ERISA § 514(a) unless it is saved from preemption by one of the exceptions listed in ERISA § 514(b), 29 U.S.C. § 1144(b).

## III. THE SAVINGS CLAUSE AND THE "BUSINESS OF INSURANCE"

State laws regulating insurance are "saved" from preemption by ERISA § 514(b)(2)(A) which provides:

> Except as provided in subparagraph (B) (the deemer clause), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A).

Whether a state law "regulates insurance" for purposes of ERISA is analyzed in accordance with the principles that have been developed under the McCarran–Ferguson Act.[5] The McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15, provides in part:

> No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any state for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.

In *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982), the Supreme Court

---

**5.** In *Metropolitan Life,* the Supreme Court recognized that the ERISA savings clause and the McCarran–Ferguson Act "serve the same federal policy and utilize similar language to define what is left to the States." 471 U.S. at 744 n. 21, 105 S.Ct. at 2391.

identified three factors for determining whether a practice is the "business of insurance" for purposes of the McCarran–Ferguson Act:

> [F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry.

The Plaintiffs maintain that the PPO Statute at issue does in fact regulate the "business of insurance" under the three factor test of *Pireno*. First, the Plaintiff argues that the application of § 38.2–3407 operates to spread risk because if affects the type of coverage that must be provided pursuant to a preferred provider program established by an insurer. The prohibition against unreasonable discrimination in the terms and conditions governing provider participation is closely related to the scope of coverage mandated and the availability of services. As such, the Virginia statute regulates who can provide the covered services and how the health care provider is selected. The risk affected, therefore, is the cost of health care to be borne by the insurer or the beneficiary of the insurance program. Aetna offers the PPO in connection with its insurance products. The Plaintiff claims that the nexus between Aetna's insurance products and its PPO is sufficient to link the PPO to Aetna's insurance with respect to the transfer of risk.

The Plaintiff relies on the case of *Blue Cross and Blue Shield v. Bell*, 798 F.2d 1331 (10th Cir.1986), in which the court ruled that Kansas statutes imposing mandated benefits and mandated provider requirements on health insurance policies were not preempted by ERISA because of the insurance savings clause. With respect to the first element of the McCarran–Ferguson test, the court stated:

> Insurance is an arrangement for transferring and distributing risk.... [T]he insured's right to choose the type of practitioner to fulfill the agreed upon coverage must figure into, and play a part in, the 'spreading and underwriting of a policyholder's risk.' (Citations omitted.) ... Implicit in the coverage of [health] care is the insured's choice of a deliverer of the care. The choice of a provider does not add to the insured's coverage but is of the essence of that coverage bargained for as the transferred risk. Thus, the mandated provider statutes at issue satisfy the first criterion of the 'business of insurance.'

*Bell*, 798 F.2d at 1335.

Secondly, the Plaintiff argues that the PPO statute affects the policy relationship between the insurer and the insured. The statute affects the establishment of the service delivery mechanism, the types of providers that must be included, and preserves access to nonpreferred providers. All this affects the nature of the services available, who can provide those services, and who must be paid for those services. The Plaintiff argues that each of these factors is intimately related to the policy relationship.

Again, the Plaintiff relies on *Bell* with respect to the second element of the test:

> The second criterion is readily met. The selection of a particular provider is as integral to the bargained-for coverage as the coverage itself. The freedom to choose a treating physician is inextricable from the nature of the coverage provided. Because the policy alone has defined the limits of coverage, the insured's choice of a provider resides with the contractual relationship between the insurer and the insured. (Citation omitted.)

*Id.* at 1335.

Lastly, the Plaintiff argues that the ERISA savings clause applies because the PPO Statute is imposed solely on insurers. Section 38.2–3407 is a portion of Virginia's Insurance Code and its provisions apply solely to "insurers" as defined in section 38.2–100. None of Plaintiff's arguments are persuasive.

As the Defendant correctly argues, the PPO statute in question does not regulate the "business of insurance," but, instead regulates the "business of insurance companies." While the former is saved from

ERISA preemption, the latter is not. Applying the *Pireno* test, first, the agreements entered into between Aetna and various health care providers do not involve the spreading of risk. Unlike Stuart Circle, Aetna argues that its PPO is, in actuality, a cost saving arrangement, not a risk transferring mechanism, even if the cost-savings translate into lower premiums for the insured. *See Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 216, 99 S.Ct. 1067, 1075, 59 L.Ed.2d 261 (1979).

For example, in *Royal Drug*, a Texas insurance company offered policies entitling insured persons to purchase prescription drugs for $2 each from any pharmacy participating in a "Pharmacy Agreement" with Blue Shield; policyholders could also purchase prescription drugs from nonparticipating pharmacies but would have to pay the full price and seek reimbursement from Blue Shield for a portion of the price. Any Texas pharmacy could participate, although the pharmacy was required by the plan to sell prescription drugs to Blue Shield's policyholders for $2 each, and were only reimbursed for the costs of acquiring the drugs.

In analyzing these pharmacy agreements to determine if they qualified as the "business of insurance," the Supreme Court first noted that the agreements did not have the effect of transferring or spreading a policyholder's risk because they were "merely arrangements for the purchase of goods and services by Blue Shield." *Id.* at 214, 99 S.Ct. at 1075. The agreements served "only to minimize the costs Blue Shield incurs in fulfilling its underwriting obligations," *id.* at 213, 99 S.Ct. at 1074, and while "[s]uch cost-savings arrangements may well be sound business practice, and may well inure ultimately to the benefit of policyholders in the form of lower premiums, ... they are not the 'business of insurance.'" *Id.* at 214, 99 S.Ct. at 1075.

The arrangements between Aetna and the hospitals and physicians that participate in the Aetna PPO are similarly "for the purchase of goods and services," not involving the business of insurance.[6] Aetna contracts with various hospitals and physicians to provide health care to Aetna's customers, who may or may not be insured by Aetna.[7] Any transfer of risk occurs when (and if) Aetna insures a benefit plan, not when it minimizes its cost of fulfilling its contractual obligations. Thus, the arrangements are "legally indistinguishable from countless other business arrangements that may be made by insurance companies to keep their costs low and thereby also keep low the level of premiums charged to their policyholders." *Id.* at 215, 99 S.Ct. at 1075.

Secondly, the practice is not an integral part of the relationship between the insurer and the insured. Indeed, in many instances there is no insurer-insured relationship between Aetna and the employee benefit plan. As in *Royal Drug*, the agreements at issue are not between the insurer and the insured but, rather, between Aetna and hospitals/physicians. *See also Caldwell*, 647 F.Supp. at 589 ("As the agreements are with parties outside the insurance industry, they do not meet the second criterion for identifying the 'business of insurance.'") If the Virginia statute meant to regulate the business of insurance, its aim at the relationship between the insurer and medical providers is off target.

Finally, the practice being regulated is not limited to entities within the insurance industry. Various non-insurers maintain preferred provider programs in Virginia.

6. *Jordan v. Group Health Ass'n*, 107 F.2d 239 (D.C.Cir.1939), specifically relied on by the Supreme Court in *Royal Drug*, supports the Defendant's argument. In *Jordan*, the D.C. Circuit held that an arrangement between a corporation that contracted with physicians, hospitals, and others to provide medical services did not constitute the business of insurance. *Id.* at 247. Rather, the court concluded that the corporation's activities "constitute the quantity purchase of well-rounded, continuous medical service by its members." *Id.* Unlike the business of insurance which is principally concerned with risk, the corporation was "concerned principally with *getting services rendered* to its members and doing so at lower prices made possible by quantity purchasing and economics in operation." *Id.* (emphasis in original).

7. Recall that Aetna sells access to its PPO as a third party administrator for self-funded plans.

PPO programs simply constitute a line of business in which Aetna, an insurance company, has entered. *See Caldwell*, 647 F.Supp. at 589 ("provision of prescription drugs through participating agreements is not a practice which is limited to the insurance industry"). Section 38.2–3407 does not regulate insurance contracts; it regulates a type of business entered into by insurance companies. This practice also "inevitably involves third parties wholly outside the insurance industry—namely, [hospitals and physicians]." *Pireno*, 458 U.S. at 132, 102 S.Ct. at 3010. In addition, the PPO Statute affects insurance companies even if they do not insure the employee benefit plan which has access to the PPO, but simply administer it. Thus, because the practice is one that frequently and inevitably involves entities outside the insurance industry, and sometimes does not even involve insurance at all, it does not meet the third criterion for identifying practices constituting the "business of insurance."

The Plaintiff's reliance on the Tenth Circuit's decision in *Bell* is misplaced. As discussed above, that case involved a Kansas statute that imposed mandated benefits and mandated provider requirements on health insurance policies. *Bell*, 798 F.2d at 1333. Statutes which specify what benefits *must be provided* are clearly distinguishable from the regulation of how those health care benefits are to be delivered, which is the focus of the PPO Statute. Thus, the practice at issue in *Bell* involved the regulation of activities far closer to the business of insurance than the PPO arrangements entered into between Aetna and the various hospitals and physicians it contracts with to provide medical and health services to its customers.

In sum, the Court finds that the Virginia PPO Statute relates to employee benefit plans. First, this case is more analogous to *Royal Drug* and *Caldwell*, both of which involved participating pharmacy agreements, than it is to *Bell*. Second, taking a "commonsense view of the matter," *see Metropolitan Life*, 471 U.S. at 740, 105 S.Ct. at 2389, the PPO Statute seeks to regulate businesses that organize PPOs; the statute focuses on the relationship between insurers and those health benefit providers who participate in PPO networks. The statute does not involve the relationship between insurers and policyholders, such as the issuance, reliability, type, or interpretation of insurance contracts—the essence of the business of insurance. *See, e.g., SEC v. National Securities, Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969).

Moreover, under the PPO Statute, it is of no consequence whether or not the insurance company regulated is actually insuring any benefit plans at all. If section 38.2–3407 truly regulated the business of insurance, then the action of a non-insurer, say a third-party administrator, in offering a health benefit program containing a PPO should also constitute the business of insurance. This is, of course, not the case. *See FMC Corp. v. Holliday*, 498 U.S. 52, ——, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990);[8] *Thompson v. Talquin Bldg. Products Co.*, 928 F.2d 649, 652 (4th Cir.1991). Thus, assuming that the PPO Statute does come within the purview of the savings clause, the statute would create the anomalous situation that insured plans or plans with PPOs administered by insurance companies would be regulated, while self-funded plans administered by other third-party administrators would not.

It certainly seems unreasonable to maintain that merely establishing a PPO network is engaging in the business of insurance. *See Jordan*, 107 F.2d at 247. And the fact that an insurance company establishes such a program does not convert a

---

**8.** In *FMC Corp.*, the Supreme Court stated:

We read the deemer clause to exempt self-funded ERISA plans from state laws that 'regulate insurance' within the meaning of the saving clause.... [S]elf-funded ERISA plans are exempt from state regulation insofar as that regulation 'relate[s] to' the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not 'saved' because they do not regulate insurance. State laws that directly regulate insurance are 'saved' but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws.

498 U.S. at ——, 111 S.Ct. at 409.

non-insurance relationship into one involving the business of insurance. *See SEC v. National Securities, Inc.,* 393 U.S. at 459–60, 89 S.Ct. at 568–69 (noting that insurance companies do many things that are not the "business of insurance").[9]

The PPO statute is essentially one-sided. It does not transfer or distribute risk from insured to insurer or vice-versa. It simply tells an insurance company that if it desires to satisfy its health care obligations through the use of a preferred provider network, then it must set nondiscriminatory terms and conditions for all potential providers. In short, this statute does not regulate the "business of insurance," and is thus not saved from preemption under ERISA.

## CONCLUSION

Judgment will be entered for the Defendant. The Court is aware that, for good or bad, this decision means that Va.Code § 38.2–3407(B) is from this day forth unenforceable. However, in determining whether or not the PPO Statute is preempted by federal law, this effect is of no consequence. When federal preemption is invoked under the directive of the Supremacy Clause, it falls to this Court to examine the intent of Congress. By enacting ERISA, Congress explicitly mandated the preemption of state law as it relates to employee benefit plans, thereby displacing all state laws, even consistent ones, on the same subject. Thus, to the extent that this ruling creates a regulatory void in regards to preferred provider networks in Virginia, such a result is mandated by ERISA.

For the reasons stated above, the Defendant's Motion for Summary Judgment is granted.

---

**9.** In *SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), the Court explained:

The [McCarran–Ferguson Act] did not purport to make the states supreme in regulating all the activities of insurance *companies;* its language refers not to the persons or companies who are subject to state regulation, but to laws 'regulating the *business* of insurance.' Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the 'business of insurance' does the statute apply. *Id.* at 459–60, 89 S.Ct. at 568 (emphasis in original).