### STUART CIRCLE HOSPITAL CORPORATION, Plaintiff–Appellant,

v.

### AETNA HEALTH MANAGEMENT; Aetna Life Insurance Company, Defendants–Appellees.

### HCA Health Services of Virginia, Amicus Curiae.

#### No. 92–1964.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1993.

Decided June 2, 1993.

Peter B. Edelman, Keck, Mahin & Cate, Washington, DC, argued (Philip L. O'Neill, Keck, Mahin & Cate, Washington, DC, William R. Rakes, J. Scott Sexton, Gentry, Locke, Rakes & Moore, Roanoke, VA, on brief), for plaintiff-appellant.

William Jeffrey Kilberg, Gibson, Dunn & Crutcher, Washington, DC, argued (Paul Blankenstein, Jeffrey T. Gilleran, Gibson, Dunn & Crutcher, Washington, DC, John B. McCammon, Laura G. Fox, Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, VA, on brief), for defendants-appellees.

William D. Iverson, William J. Shieber, Covington & Burling, Washington, DC, for amicus curiae.

Before BUTZNER, Senior Circuit Judge, VOORHEES, Chief United States District Judge for the Western District of North Carolina, sitting by designation, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

BUTZNER, Senior Circuit Judge:

Stuart Circle Hospital Corporation appeals the district court's grant of summary judgment against it and in favor of Aetna Health Management and Aetna Life Insurance Company. *See Stuart Circle Hospital Corp. v. Aetna Health Management,* 800 F.Supp. 328 (E.D.Va.1992). The Hospital alleges that the district court erred by holding that Virginia Code § 38.2–3407, which prohibits insurance companies from unreasonably discriminating in establishing preferred provider organizations (PPOs), is unenforceable because it is preempted by Section 514(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a). We review the district court's decision de novo. *Higgins v. E.I. DuPont,* 863 F.2d 1162, 1167 (4th Cir.1988). Because we conclude that ERISA's insurance savings clause, 29 U.S.C. § 1144(b)(2)(A), exempts the Virginia statute from the application of ERISA's preemption clause, we vacate the judgment of the district court and remand the case for further proceedings.

### I

To establish an insurer's PPO, an insurance company contracts with hospitals, doctors, and other health care providers for reduced charges. The insurer encourages utilization of these providers by its insureds. Although insureds may use providers other than those which participate in the PPO, they generally must pay a higher fee for the service rendered, as well as be reimbursed at a lower rate.

Virginia regulates the selection of an insurance company's preferred providers by Virginia Code § 38.2–3407:

A. One or more insurers may offer or administer a health benefit program under which the insurer or insurers may offer preferred provider policies or contracts that limit the numbers and types of providers of health care services eligible for payment as preferred providers.

B. Any such insurer shall establish terms and conditions that shall be met by a hospital, physician or type of provider listed in § 38.2–3408 in order to qualify for payment as a preferred provider under the policies or contracts. These terms and conditions shall not discriminate unreasonably against or among such health providers. No hospital, physician or type of provider listed in § 38.2–3408 willing to meet the terms and conditions offered to it or him shall be excluded.

\* \* \* \* \* \*

E. For the purposes of this section, "preferred provider policies or contracts" are insurance policies or contracts that specify how services are to be covered when rendered by preferred and nonpreferred classifications of providers.

This section is one of several statutes found in chapter 34 of the Virginia Code, §§ 38.2–3400 to 38.2–3430, relating to accident and sickness insurance.

In early 1987, Aetna established a PPO in Richmond. Aetna markets its PPO only to employee benefit plans. The hospitals which Aetna selected as providers for its PPO were the same hospitals that were already participating in Aetna's health maintenance organization, HMO CHOICE. Aetna did not designate Stuart Circle Hospital to be one of its PPO provider facilities, although Stuart Circle was willing to meet Aetna's terms.

The Hospital brought this action, alleging that Aetna had failed to comply with Va.Code § 38.2–3407 by excluding it from participation in the Aetna PPO. In its defense, Aetna asserted that the Virginia statute is preempted by ERISA. The district court found that the Virginia statute affects employee benefit plans by regulating the struc-

ture of an insurer's PPO. 800 F.Supp. at 331–32. It therefore decided that because the Virginia statute relates to employee benefit plans, ERISA preempts the statute unless it is saved from preemption by the insurance clause. 800 F.Supp. at 333. Concluding that the Virginia statute regulated the business of an insurance company, and not the business of insurance, the district court held that ERISA preempted it. 800 F.Supp. at 333–37. The court granted summary judgment for Aetna, and Stuart Circle appealed.

## II

Title 29 U.S.C. § 1144(a) provides that ERISA preempts state laws that "relate to any employee benefit plan," unless the laws are exempted. From time to time the Supreme Court has emphasized the breadth of ERISA's preemption provision. See Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 138–42, 111 S.Ct. 478, 482–84, 112 L.Ed.2d 474 (1990) (citing cases). It has stated that the "relates to" language should be given its broad common-sense meaning so as to displace state laws which even indirectly concern themselves with employee benefits plans. Pointing out that "the key to [ERISA's preemption clause] is found in the words 'relate to,'" the Court reiterated that a state law may be preempted even though it does not address "the specific subjects covered by ERISA." Ingersoll–Rand, 498 U.S. at 138, 111 S.Ct. at 482. The Court has delineated the breadth of the preemption clause by the statement: "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). It is not surprising, therefore, that the Court has "virtually taken it for granted that state laws which are specifically designed to affect employee benefit plans are preempted...." Mackey v. Lanier Collection Agency, 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988) (citations and internal quotation marks omitted).

We agree with the district court that, contrary to the Hospital's contentions, Va.Code

§ 38.2–3407 relates to employee benefit plans.

The Virginia statute states that it applies to "health benefit program[s]" operated by insurers. Additionally, it has at its core a provision relating to the benefits which an insured may receive from an insurer's PPO. The statute restricts the ability of an insurance company to limit the choice of providers that otherwise would confine the participants of an employee benefit health plan to those preferred by the insurer. To be sure, a participant can select a provider outside the plan, but only at the expense of forfeiting some of his or her benefits. We conclude that 29 U.S.C. § 1144(a) preempts Va.Code § 38.2–3407 unless ERISA's insurance savings clause applies.

## III

ERISA's insurance savings clause, 29 U.S.C. § 1144(b)(2)(A), provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." The effect of the clause is to save state laws governing the business of insurance from preemption that would otherwise occur by application of 29 U.S.C. § 1144(a). The Hospital argues that this savings clause exempts Va.Code § 38.2–3407 from ERISA preemption because the Virginia statute regulates the business of insurance. Aetna contends, and the district court held, that the Virginia statute is not saved from preemption because it regulates the noninsurance business of insurance companies.

In Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Supreme Court addressed the savings clause in the context of determining whether a state statute which mandated a minimum level of psychological benefits regulated insurance and was thus saved from ERISA preemption. The Court approached its task by employing a two-part analysis. First, the Court took a "common-sense" approach, finding that the statute at issue regulated insurance contracts and thus logically should be encompassed by the "which regulates insurance" language of the savings clause. Metropolitan Life, 471 U.S.

at 740–41, 105 S.Ct. at 2389. Second, the Court examined the case law which interpreted the phrase "business of insurance" with respect to the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq. To illustrate that Massachusetts' mandated benefit law was a regulation of the business of insurance and, therefore, not preempted by ERISA, the Court reiterated:

> Congress was concerned [in the McCarran–Ferguson Act] with the type of state regulation that centers around the contract of insurance.... The relationship between insurer and insured, the type of policy which could be issued, its reliability, its interpretation, and enforcement—these were the core of the "business of insurance." [T]he focus [of the statutory term] was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the "business of insurance."

*Metropolitan Life,* 471 U.S. at 743–44, 105 S.Ct. at 2391 (emphasis deleted) (*quoting SEC v. National Securities, Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969)).

The Court also referred to criteria for interpreting the scope of the McCarran–Ferguson Act set forth in *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982):

> *first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry.

*Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391.

Applying these standards, we conclude that Va.Code § 38.2–3407 regulates the business of insurance. It is part of a comprehensive code regulating accident and sickness insurance. The statute regulates the "relationship between insurer and insured [and] the type of policy which could be issued." 471 U.S. at 744, 105 S.Ct. at 2391. It prohibits an insurer's unreasonable restriction of the insured's choice of physician and hospital.

To borrow the Court's phrase, a "common-sense view" of the Virginia statute discloses that it regulates certain insurance contracts, albeit indirectly through the structure of the PPO.

Furthermore, the Virginia statute passes muster under the three criteria that *Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391, derived from *Pireno.* As *Pireno* notes: "None of these criteria is necessarily determinative in itself...." 458 U.S. at 129, 102 S.Ct. at 3009. The Virginia statute satisfies the first criterion, "transferring or spreading the policyholder's risk." There are several components to the "policyholder's risk." They include the types of illness and injury that the insurance contract covers, provision for treatment, and the cost of treatment. The Virginia statute affects the type and cost of treatment available to an insured. If a PPO unreasonably restricts the providers of treatment, even though they meet the insurer's standards, it denies an insured the choice of doctor or hospital that may best suit the insured's needs, unless the insured is willing and able to pay all or part of the cost of the doctor or hospital that is not preferred by the insurer. This is a restriction of the insured's benefits. By its prohibition against unreasonable restriction of providers, the Virginia statute spreads the cost component of the policyholder's risk among all the insureds, instead of requiring the policyholder to shoulder all or part of this cost when seeking care or treatment from an excluded doctor or hospital of his or her choice.

The Virginia statute satisfies the second criterion because it is "an integral part of the policy relationship between the insurer and the insured." *Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391. We repeat, treatment and cost are important components of health insurance. Regulations governing these components, such as the Virginia statute, are integral parts of the relationship between insurer and insured. In this respect mandatory-provider regulations are conceptually similar to the mandatory-benefit law that *Metropolitan Life* held was a law regulating insurance and consequently not preempted by ERISA. 471 U.S. at 758, 105 S.Ct. at 2398. Moreover, in dicta, speaking of state

regulation of the substantive terms of group health insurance contracts, the Court recognized that mandatory-provider statutes were among these terms in many states. *See Metropolitan Life,* 471 U.S. at 729 and n. 9, 105 S.Ct. at 2384 and n. 9.

The Virginia statute also satisfies the third criterion. It is expressly "limited to entities within the insurance industry." *Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391. ERISA's deemer clause, 29 U.S.C. § 1144(b)(2)(B), precludes employer self-funded employee benefits plans from being brought within the scope of Va.Code § 38.2–3407. The district court observed that this difference in the regulation of employer-funded PPOs and insurer PPOs creates an anomalous situation. 800 F.Supp. at 336. But this anomaly does not counsel preemption. The Supreme Court referred to a similar situation in *Metropolitan Life:*

> We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and one it has chosen not to alter.

471 U.S. at 747, 105 S.Ct. at 2393.

Though the Virginia statute regulates the relationship between the insurer and insured through the formation of the insurer's PPO, it is nonetheless a law regulating the business of insurance. The Supreme Court held in *SEC v. National Securities,* 393 U.S. at 460, 89 S.Ct. at 568, and reiterated in *Metropolitan Life,* 471 U.S. at 744, 105 S.Ct. at 2391, that statutes regulating the relationship between insurer and insured "directly or indirectly are laws regulating the business of insurance."

Aetna relies primarily on *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), for the proposition that Va.Code § 38.2–3407 does not regulate the business of insurance within the meaning of the McCarran–Ferguson Act. *Royal Drug* concerned an antitrust challenge by several pharmacists to an insurance company's program requiring any pharmacy which desired to serve the company's policyholders to sell them prescription drugs for $2 and to seek reimbursement from the insurer for only the cost of acquiring the drugs. The Court held that these agreements were "merely arrangements for the purchase of goods and services" by the insurance company. 440 U.S. at 214, 99 S.Ct. at 1074. Consequently, it ruled that the program was not the business of insurance within the meaning of the McCarran–Ferguson Act and that it was not exempted from antitrust laws. 440 U.S. at 214, 99 S.Ct. at 1074. To the same effect is *General Motors Corp. v. Caldwell,* 647 F.Supp. 585 (N.D.Ga.1986), which relied on *Royal Drug* to preempt a statute dealing with a prescription drug program.

Aetna analogizes the Virginia statute to the drug purchase program described in *Royal Drug.* It characterizes the PPO regulation as merely facilitating the exchange of goods and services and thus not transferring or spreading risks. It emphasizes the fact that the regulation affects only the relationship between insurers and providers, not between insurers and insureds.

The practice at issue in *Royal Drug,* unlike Aetna's PPO, did not restrict the availability of benefits to insureds because any pharmacy which agreed to the insurance company's terms was allowed to participate. Aetna's characterization of the Virginia statute misconceives the relationship which the Virginia statute affects. As previously explained, although facially the statute only directly affects providers, it indirectly affects the insured's choice of provider and the consequent cost to the insured if he or she deems an excluded provider to be better qualified for treatment of a specific illness or accident. In this way it affects the risk that an insured must bear.

Aetna's claim that its PPO is simply a commercial transaction that reduces the cost of insurance overlooks the decision of the Virginia General Assembly to give priority to an insured's freedom to choose doctors and hospitals over the possibility of reduced insurance premiums. This legislative decision to favor an insured's choice of providers does not compel preemption. The wisdom of this

decision is a concern of the legislature, not the judiciary.

Although the Court cited *Royal Drug* in *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. at 2391, it did not consider the outcome of *Royal Drug* to be precedent applicable to a statute prescribing mandatory benefits in health insurance contracts. Following the rationale of *Metropolitan Life*, we believe that *Royal Drug* is not precedent applicable to the Virginia statute pertaining to mandatory providers in insurers' PPOs.

Other courts support our conclusion that because the Virginia statute regulates the business of insurance, ERISA does not preempt it. In *Blue Cross and Blue Shield v. St. Mary's Hospital*, 245 Va. 24, 426 S.E.2d 117 (1993), the Supreme Court of Virginia relied on *Metropolitan Life*, 471 U.S. 724, 105 S.Ct. 2380, to hold that a statute regulating nonstock insurance company PPOs regulated the business of insurance and thus escaped preemption by ERISA. In that case the issues were the same as those before us. A hospital excluded from a PPO sought redress. The Virginia Supreme Court noted the district court's opinion in *Stuart Circle*, which we are reviewing, and declined to follow it.

Reaching the same conclusion with respect to statutes mandating specialized providers are *Blue Cross and Blue Shield v. Bell*, 798 F.2d 1331, 1334–36 (10th Cir.1986), and *Blue Cross Hospital Service v. Frappier*, 698 S.W.2d 326 (Mo.1985).

The district court's judgment is vacated, and the case is remanded for further proceedings. The Hospital shall recover its costs.

*VACATED AND REMANDED.*