Geraldine K. **RICHTER**, Plaintiff,

v.

**CAPP CARE, INC.,** Defendant.

**Civ. A. No. 94–0614–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 1, 1994.

---

**2.** There is an exception for medical services fur-  nished by the Veterans Administration.

Paul Stone Richter, Richter, Miller & Finn, Washington, DC, for plaintiff.

John Edward Neugebauer, John Mark Murdock, Epstein, Becker & Green, Washington, DC, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HILTON, District Judge.

This case came before the Court for trial on October 12, 1994, and based on the evidence presented and submissions of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Plaintiff is a physician and orthopedic surgeon engaged in the private practice of medicine and orthopedic surgery in Northern Virginia. She maintains offices in Manassas and Fairfax County and has staff privileges at Fairfax Hospital and Prince William Hospital.

2. Capp Care is a managed health care company. All of the stock of Capp Care is owned by a number of major insurance companies. The insurance company owners include: Allstate, American United Life, Home Life Insurance, Nationwide Insurance, Pacific Mutual Life and Provident Mutual Life.

3. Capp Care is in the business of administering the health benefit programs of various insurance companies, and third party insurer-payors throughout the United States. To administer such programs, Capp Care organizes and establishes networks of preferred health care providers.

4. Capp Care receives 50 percent of its revenue from self-insured employers and 50 percent from insurance companies. Only four of the six owner companies are payors in the Capp Care network, and its customers

include large self-insured employers, such as Disney, General Mills, Hormel and Coors.

5. No directors, executives, or employees of the insurance company shareholders sit on Capp Care's Board of Directors and have not since 1991 or 1992. No executives or employees of the insurance company shareholders are employed by Capp Care. The insurance company shareholders have no involvement in the day-to-day operations of the company.

6. In 1993, Capp Care contracted with various health care providers in Northern Virginia in order to establish and operate a new PPO network in Northern Virginia.

7. Capp Care entered into an agreement with Northern Virginia Provider Services, Inc. ("NVPSI") whereby all NVPSI participating physicians would be offered the opportunity to enter Capp Care's Northern Virginia preferred provider network and to qualify for payments as preferred providers subject to the approval of Capp Care.

8. Capp Care agreed to accept a copy of the application and related data submitted to NVPSI by each NVPSI member physician in lieu of requiring each NVPSI physician to directly submit an application to Capp Care.

9. In October, 1993, plaintiff read and signed Capp Care's Provider Agreement, and completed and signed a Credentials Release Form which authorized NVPSI to release all credentialing information as requested by Capp Care.

10. In 1993, plaintiff received a memorandum from NVPSI which informed her of the agreement entered into by NVPSI and Capp Care, together with an overview of the contract between Capp Care and NVPSI, a copy of Capp Care's Provider Agreement and a copy of a Credentials Release Form. Plaintiff completed and signed Capp Care's Provider Agreement and completed and signed the Credentials Release Form.

11. Plaintiff's application for membership into Capp Care's preferred provider network was forwarded to Capp Care by NVPSI and received by Capp Care.

12. By use of a form letter dated March 8, 1994, the plaintiff was notified that her application to become a preferred provider in the Capp Care network had been denied. Capp Care's letter gave no reason why plaintiff had been rejected.

13. Following her application to be a participant in the Capp Care network, plaintiff was informed, in writing, that as one of the terms and conditions for membership she would have to be credentialed by Capp Care. She similarly was advised that acceptance of her application was contingent upon such credentialing by Capp Care.

14. Plaintiff consented to a public reprimand from the Virginia Board of Medicine on October 4, 1991, for the conduct described in the "Consent Order" issued by the Virginia Board of Medicine.

15. Capp Care rejects the applications of all physicians who have been disciplined by state medical boards for conduct of the type for which plaintiff was reprimanded.

16. Capp Care will reconsider the application of a physician disciplined by a state medical board for conduct of the type for which plaintiff was reprimanded where the physician provides documentation he or she has undergone treatment for the conditions which caused the conduct.

17. Capp Care rejected plaintiff's application because of her reported disciplinary action by the Virginia Board of Medicine. Capp Care's use, in the credentialing process, of information about plaintiff's disciplinary action is consistent with credentialing practices throughout the medical community.

18. Plaintiff did not provide to Capp Care any documentation that she has undergone any treatment for the conditions for which treatment was recommended by the Virginia Board of Medicine and to which she agreed in the "Consent Order".

19. Capp Care learned of plaintiff's disciplinary action through a book entitled *Questionable Doctors* and newspaper articles received from a clipping service. These two sources of information provided reliable reports of plaintiff's reprimand and the findings of the Virginia Board of Medicine in the "Consent Order".

20. Capp Care has not accepted the application of any physician in Virginia who has been reprimanded by the Virginia Board of Medicine.

21. Plaintiff is not similarly situated to any other applicant to Capp Care's PPO inasmuch as she is the only NVPSI applicant who was disciplined by the Virginia Board of Medicine.

22. Plaintiff's membership in at least two PPOs or HMO networks, of which she already had been a member for several years, was terminated following the October 1991 disciplinary action and the criminal trials.

23. Plaintiff's applications to become a member of several other PPOs or HMO networks have been denied since the October 1991 disciplinary action, at least one of which was expressly denied on the basis of credentialing information received from the Federation of State Medical Boards.

24. Capp Care is not an insurer or insurance company. Capp Care does not offer preferred provider policies or contracts.

25. Capp Care's insurance company shareholders do not have any role in Capp Care's administration, operational policies, decisions about where and when to set up networks or which physicians to credential. None of the insurance company shareholders of Capp Care have insured "lives" in Capp Care's PPO in Northern Virginia. None of the insurance company shareholders requested, nor were they consulted about, Capp Care's setting up a PPO in Northern Virginia.

26. Capp Care does not determine, market or interpret the benefits offered by insurers under policies or contracts of insurance to those insured with access to providers through Capp Care's network.

27. Capp Care does not pay, guarantee or mediate claims for services by providers to payors. Providers submit claims directly to the payors. Payors pay claims directly to providers.

28. Capp Care, as "agent and attorney-in-fact" only has authority to bind payors to the reimbursement schedule accepted by providers. Therefore, as "agent and attorney-in-fact", Capp Care is not the alter ego of insurance companies.

### Conclusions Of Law

■ Plaintiff brings this action claiming a violation of the Virginia Any Willing Provider law, Va.Code Ann. § 38.2–3407(B) (Michie 1994), and its provisions that provide a prohibition against unreasonable discrimination against physicians.

However, Capp Care is not subject to the provisions of § 38.2–3407(B). This statute regulates the business of insurance. Specifically, it regulates the selection of an insurance company's preferred providers.

The definition of "insurer" in Va.Code § 38.2–100 (1994) is:

" 'Insurer' means an insurance company."

" 'Insurance company' means any company engaged in the business of making contracts of insurance."

*Stuart Circle Hosp. Corp. v. Aetna Health Management,* 995 F.2d 500 (4th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 579, 126 L.Ed.2d 478 (1994), clearly held that the Any Willing Provider statute only applies to insurance PPOs within the insurance industry, and regulates the relationship between insurer and insured and the type of policy which could be issued. *Id.* In addition, the Court distinguished insurer PPOs, to which the statute is applicable, from employer-funded and uninsured PPOs such as Capp Care. The Court concluded in *Stuart Circle,* that the application of the statute to insured PPOs, and not to uninsured PPOs, is a distinction created by the Virginia Legislature. *Id.* at 504.

Capp Care does not offer "preferred provider policies or contracts." Va.Code § 38.2–3407A. [P]referred provider policies or contracts are defined as *"insurance policies or contracts that specify how services are to be covered."* Va.Code § 38.2–3407E. Not only does Capp Care not issue policies, but no more than 50 percent of its business is for insurance companies. Fifty percent of its business comes from self-insured employers.

Plaintiff also claims that Capp Care is the alter ego of insurance companies and should be subject to the Any Willing Provider law because 1.) "it is a corporation owned and *controlled by a group of insurers which operate* Capp Care expressly to organize and administer preferred provider organizations" and 2.) "it operates as agent and attorney-in-fact for the group of insurers which own it and for other (non-owner) insurers *expressly to organize* and administer preferred provider networks *for those insurers*". However, there is no evidence that the insurance company shareholders "control" and "operate" Capp Care. The evidence is to the contrary. No officer of any owner is on the board of Capp Care. Plaintiff has not shown that Capp Care, as agent and attorney-in-fact exists expressly to organize PPO networks for those insurers. The evidence again is to the contrary. Capp Care as a company operates nationwide to organize PPO networks for numerous insurance companies and corporations that provide their own health programs. The owners represent a small portion of the total business. The majority of the business comes from self-insured employers and non-owner insurance companies. It is clear from the evidence that Capp Care is not in the business of insurance and does not come under the statute.

In any event, there is no evidence that Capp Care unreasonably discriminated against the plaintiff. Credentialing by Capp Care was one of the "terms and conditions that shall be met by a ... physician ... in order to qualify for payment as a preferred provider...." Va.Code § 38.2–3407B. The Fourth Circuit held in *HCA Health Services of VA, Inc. v. Metropolitan Life Insurance Co.*, 752 F.Supp. 202, 207 (E.D.Va.1990), that under the terms of the statute an insurer has considerable latitude in determining the manner in which it selects preferred providers for its PPO. The Court further held that the criteria used to select providers are the functional equivalent of statutorily required terms and conditions.

In *HCA Health Services,* the defendant engaged in price negotiations to devise a short list of eligible providers. The defendant fulfilled its legal duty by establishing and communicating to all prospective providers with which it negotiated the selection criteria. Similarly, Capp Care communicated to plaintiff, through NVPSI, the fact that credentialing by Capp Care was a term and condition of acceptance.

Capp Care's credentialing policy to deny the applications of physicians who have been disciplined for professional misconduct, did not discriminate unreasonably against plaintiff. There is no evidence to show that Capp Care accepted the applications of other similarly situated physicians who were disciplined by the Virginia Board of Medicine or that Capp Care's consideration, in its credentialing, of her reprimand by the Virginia Board of Medicine for professional misconduct is an unreasonable criterion.

The defendant must be able to rely on the reporting of state medical boards to establish physician networks for reporting physician disciplinary actions. If PPO networks cannot utilize reported VBM disciplinary actions, they will have lost a significant part of their practical ability to exercise control over the quality of physicians who care for network members, and they would be denied the information of the only body that establishes the qualifications for a doctor to practice.

It is clear that to require a PPO to recreate the investigative and hearing processes of the VBM to determine whether the Board's conclusions have a valid basis is to impose an unreasonable credentialing burden on PPOs. The action of the defendant in relying on the VBM's decision was reasonable and the defendant acted reasonably in denying the plaintiff preferred provider status in the Capp Care network. Judgment should be entered in favor of the defendant. An appropriate Order shall issue.